# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:19-cv-00139-FDW

| | |
|---|---|
| DUSTIN LAMAR BINGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU GARLAND, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A. [Doc. 1]. Plaintiff is proceeding in forma pauperis. [Docs. 1, 12].

## I.  BACKGROUND

Pro se Plaintiff Dustin Lamar Bingham ("Plaintiff") is a North Carolina prisoner incarcerated at Marion Correctional Institution ("Marion"). Plaintiff filed this action on April 26, 2019, pursuant to 42 U.S.C. § 1983, naming FNU Garland, FNU Grant, FNU Odom, FNU Turnner, and FNU Ray, all identified as correctional officers at Mountain View Correctional Institution ("Mountain View"); FNU Richardson, identified as a Sergeant at Mountain View; and FNU Hudgins, identified as a Captain at Mountain View, all at the relevant times.

Plaintiff alleges that, Defendants violated his rights under the First, Eighth and Fourteenth Amendments to the U.S. Constitution in relation to punishment he received after a verbal altercation with a prison official. Plaintiff alleges, and the Court takes as true for purposes of initial review, the following:

> On 1-13-19 at approximately 06:55 hours I was talking out of my
> door to someone and the captain was making his rounds captain

>
> Hudgins. I had asked him about why we aint been getting our outside rec and showed him the policy where it said we allowed outside rec if weather aint below 20º degrees. He got mad and we started arguing but I never threatened him or nothing. I was just yelling and cussing. He shut the metal blind on my window and I said you can leave it closed for all I care and he opened it back up and he wrote me up and stated I said you can suck my dick for all I care. I layed down and about 10 minutes laters SGt. Richardson, officers Grant, Odom, Turnner, came to my cell on SGt. Richarson ask me what happen in which I told him. SGt. Richardson then asked me to submit to cuffs so they could come in and talk to me which I complied. When they came in I was asked to sit on my bunk in which I did. Next thing I know I was been placed in full restraints, shackles, waistchain, handcuffs /w black box attachment with an additional waist chain attached through my initial waist chain running down around my leg shackles and pulled tight and locked for a minimum of two hours. I was told that if I was to talk loud enough to be heard they would restart the entire ordeal. Within the two hours of being forced in this full restraint fetal position I wasn't in a observation room I was left in my room with the sheet metal blind pulled closed and every 15 minutes officers Garland and officer Ray would check on me. My 1st amendment to the constitution of the united states was violated as well as my 14th amendment section 1 to the constitution of the united states was violated as well as my 8th amendment to the constitution of the united states which was violated three times. (1) I was placed in full restraints for an unjustified reason I was not suicidal or threating correctional officers. (2) I was forced into a uncompromising, unbending, inflexible fetal position by the officers attaching the addional chain to force me into that fetal position. (3) I had no choice by to discharge by feces from my bowels because I was'nt allowed to use the toilet in my RHCP cell while fully restrained. I cried for relief to officers Garland and Ray to let me change my clothes and take a shower but I was left to stay with my own feces for (12) hours. Sgt. Richardson, captain Hudgins, officers Grant, Odom, Turnner, Garland, Ray directed for me to experience unjustly cruel and unusual punishment all because I was practicing my 1st Amendment Right to freedom of speech that was abridged at MVCI.

[Doc. 1 at 8-10 (spelling and grammatical errors uncorrected)].

Plaintiff claims he suffered "emotional stress, mental stress, [and] public humiliation" as a result of the alleged incident. [Id. at 3].

For relief, Plaintiff requests monetary relief, but does not request a jury trial. [Doc. 1 at 5].

2

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A. First Amendment

Plaintiff contends his First Amendment rights were violated because he was cruelly and unusually punished for exercising his First Amendment right to yell and cuss at correctional officers. [See Doc. 1 at 3, 8-9]. Prisoners are clearly and appropriately prohibited from verbally

3

assaulting correctional officers. See NCDPS Policy & Procedures, .0301 (a) (Inmate Conduct Rules), .0202(c)(C2) (Inmate Disciplinary Procedures). Punishing a prisoner for violating known and accepted prison rules is not violative of the First Amendment. Plaintiff, therefore, has not stated a claim under the First Amendment. The Court will dismiss this claim.

### B. Eighth Amendment

Plaintiff claims his Eighth Amendment rights were violated when (1) he was placed in full restraints for an unjustified reason, (2) he was forced into the fetal position through the use of restraints for a period of two hours, and (3) he defecated himself while in full restraints because he was not allowed to use the toilet in his cell while fully restrained. [Doc. 1 at 10].

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986), and from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Extreme deprivations are required, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Id. The plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A plaintiff must also generally allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

4

In excessive force claims, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 37-38 (citations omitted).

Here, Plaintiff alleges that he was put in full restraints that forced Plaintiff into the fetal position for two hours as punishment for Plaintiff's verbal altercation with Caption Hudgins. During the two hours that Plaintiff was so restrained, Plaintiff was not allowed to use the toilet and defecated himself. Defendants Garland and Ray, who were checking on Plaintiff, refused Plaintiff's requests to change his clothes and to shower. Thereafter, Plaintiff was forced to remain

in his own feces for twelve hours. Plaintiff claims Defendants Richardson, Hudgins, Grant, Odom, Turnner, Garland and Ray directed that Plaintiff be cruelly and unusually punished. [Doc. 1 at 9-10]. Plaintiff claims that he experienced "emotional stress, mental stress, [and] public humiliation" as a result of Defendants' alleged conduct. [Id. at 3].

The Court finds that, assuming the truth of Plaintiff's allegations, and drawing all reasonable inferences in his favor, Plaintiff's Eighth Amendment claims against all Defendants survive initial review, as they are not clearly frivolous.

C. **Fourteenth Amendment**

Plaintiff alleges, "[t]hey abridged my privileges by not letting me practice my constitutional rights which violates the 14th amendment section 1." [Doc. 1 at 3]. It appears, therefore, Plaintiff's Fourteenth Amendment claim is based on his errant belief that Defendants violated his First Amendment rights. Any claim based on the alleged violation of Plaintiff's First Amendment rights necessarily fails initial review.

To the extent that Plaintiff asserts that Defendants violated his Fourteenth Amendment due process rights based on punishment imposed on Plaintiff without a disciplinary hearing, to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Changes "in a prisoner's location, variations of daily routine, changes in conditions of

confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994). To support a claim for violation of a constitutional right under the due process clause, a plaintiff must show that his confinement posed an atypical and significant hardship in relationship to the ordinary incidents of prison life. See Wilkinson v. Austin, 545 U.S. 209 (2005).

Here, Plaintiff alleges that he was restrained in a manner that forced him into the fetal position and that prevented him from using a toilet for a period of two hours. The Court finds, assuming the truth of Plaintiff's allegations and giving Plaintiff the benefit of every reasonable inference, Plaintiff does not allege facts showing that this two-hour period of restraint posed an atypical and significant hardship in relationship to the ordinary incidents of prison life. While it is unfortunate that Plaintiff defecated himself, the use of full restraints and denial of access to a toilet for two hours did not pose an atypical and significant hardship in relationship to the ordinary incidents of prison life. Thus, Plaintiff fails to state a due process claim.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Eighth Amendment claim survives initial review. Plaintiff has failed to state claims under the First or Fourteenth Amendment and these claims will be dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint [Doc. 1] survives initial review under § 1915(e) and 28 U.S.C. § 1915A as to Plaintiff's Eighth Amendment claim, but not as to Plaintiff's First or Fourteenth Amendment claims.

2. This Court recently enacted Local Rule 4.3, which sets forth a procedure to waive

service of process for current and former employees of the North Carolina Department of Public Safety ("NCDPS") in actions filed by North Carolina State prisoners. The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants FNU Garland, FNU Grant, FNU Odom, FNU Turnner, FNU Ray, FNU Richardson, FNU Hudgins, who are alleged to be current or former employees of NCDPS.

Signed: November 26, 2019

Frank D. Whitney
Chief United States District Judge