# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:19-cv-00139-MR

| | |
|---|---|
| **DUSTIN LAMAR BINGHAM,** | ) |
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM OF DECISION AND ORDER** |
| **JOHN GARLAND, et al.,** | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment. [Doc. 43].

## I. PROCEDURAL BACKGROUND

The Plaintiff Dustin Lamar Bingham ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while incarcerated at the Mountain View Correctional Institution ("Mountain View") in Spruce Pine, North Carolina. [Doc. 1]. The Complaint, which Plaintiff signed under penalty of perjury, asserted various claims against Defendants stemming from the application of four-point restraints on Plaintiff following Plaintiff's disruptive behavior and failure to follow commands. [Id. at 5, 8-10]. Plaintiff named John Garland, Danny Grant, Phillip Odom, Dustin Turner, and Jeffrey Ray, all identified as correctional

officers; William Richardson, identified as a Sergeant; and Jeffrey Hudgins, identified as a Captain; as Defendants in this matter.[1]  [Id. at 1-2, 7-8]. Plaintiff alleged as follows.  On January 13, 2019, at approximately 6:55 a.m., Plaintiff "yelled and cussed" at and "argued with" Captain Hudgins after being denied outside recreation time and, after Captain Hudgins wrote Plaintiff up, Plaintiff said, "you can suck my dick for all I care."  [Id. at 8].  Ten minutes later, Sergeant Richardson arrived at Plaintiff's cell with Officers Grant, Odom, and Turner. After Richardson discussed what happened with Plaintiff, Plaintiff agreed to submit to handcuffs so that the officers could enter Plaintiff's cell.  Plaintiff was then placed in four-point restraints, which included shackles, a waist chain, handcuffs with a black box, and "an additional waist chain attached through [his] initial waist chain running down around [his] leg shackles," which was "pulled tight and locked for a minimum of two hours."  [Id. at 9].  Plaintiff was left in an "uncompromising, unbending, inflexible fetal position."  [Id.].  Officers Garland and Ray checked on Plaintiff every 15 minutes.  [Id.].  At some point, Plaintiff was forced to defecate himself because he was not allowed to use the toilet in his cell.  He cried out

---

[1] Plaintiff does not specify whether he is suing Defendants in their individual or official capacities.  The question is further confused by Plaintiff's allegations, in this § 1983 action, that Defendants were not acting under color of state law.  [See Doc. 1 at 1-2, 7-8].  For the sake of economy and completeness, the Court considers Defendants' motion as if Plaintiff had properly brought his claims under § 1983 in Defendants' individual and official capacities.

2

for Officers Ray and Garland to allow him to change his clothes and take a shower, but "was left to stay within [his] own feces for (12) hours." [Id.].

Based on these allegations, the Complaint survived this Court's initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A and Plaintiff was allowed to proceed with his Eighth Amendment claims based on the use of excessive force and his conditions of confinement. [Doc. 17]. On December 16, 2020, Defendants moved for summary judgment of Plaintiff's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 42]. In support of their summary judgment motion, Defendants submitted their own affidavits, a brief, various prison records, select medical records of Plaintiff, the Standard Operating Procedure at Mountain View for Disruptive Offenders, and video footage of the application of restraints. [Docs. 44, 44-1 through 44-8].

The Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 47]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed

by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))]. In response, Plaintiff filed an improper two-page letter directed to the undersigned that is not in the form of an affidavit or signed under penalty of perjury. [See Doc. 48]. In this letter, Plaintiff directs the Court to the video footage of the incident and argues that prison SOP did not support use of four-point restraints in Plaintiff's case "making defendants' action's [*sic*] cruel and unusual punishment" in violation of the Eighth Amendment. [Id. at 1]. Plaintiff also maintains in this letter that "[t]he use of force was not applied in an effort to maintain or restore discipline," but "maliciously and sadistically used for retaliation and punishment." [Id.]. Plaintiff, however, advances no argument regarding his allegations of having been left in the fetal position, defecating himself, or

4

having been denied the opportunity to clean himself thereafter. [See id.]. As such, it appears Plaintiff is abandoning his claims so far as they are based on these allegations.

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there

5

is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

6

> Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.[2]

Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

The forecast of evidence, in the light most favorable to the non-movant, is as follows.

---

[2] The Fourth Circuit, however, recently made clear that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021). As noted, the Plaintiff's Complaint was signed under penalty of perjury. Under Goodman, therefore, the Court is to consider its evidentiary value on summary judgment. In this case, however, Plaintiff appears to have abandoned his claims so far as they are based on anything other than the application of the restraints under the circumstances here. Moreover, as noted, Defendants' forecast of evidence includes video footage of the application of restraints on Plaintiff. [See Docs. 44-1 at 2, 45]. This evidence plainly contradicts Plaintiff's allegations, particularly as to the application of the restraints and Plaintiff's condition on conclusion of their application. Because a plaintiff cannot defeat summary judgment by presenting evidence that is blatantly contradicted by the record as a whole, see Scott, 550 U.S. at 380, 127 S.Ct. at 1776, and because Plaintiff appears to have abandoned most of his allegations in any event, the Court will not adopt Plaintiff's account of the incident for the purpose of ruling on this motion.

7

On July 13, 2018, Plaintiff was remanded to the custody of the North Carolina Department of Public Safety (NCDPS). [Doc. 44-1 at 4]. Plaintiff was incarcerated at Mountain View at the relevant times. Defendants were all correctional staff members there. [Doc. 44-2 at ¶ 2: Hudgins Dec.; Doc. 44-3 at ¶ 2: Grant Dec.; Doc. 44-4 at ¶ 2: Turner Dec.; Doc. 44-5 at ¶ 2: Richardson; Doc. 44-6 at ¶ 2: Odom Dec.; Doc. 44-7 at ¶ 2: Garland Dec.; Doc. 44-8 at ¶ 2: Ray Dec.]. During the six months between his admission to NCDPS custody and January 13, 2019, Plaintiff was charged with nine disciplinary infractions, including two infractions for disobeying an order, two for assault on staff with a weapon, one for lock tampering, one for damage to property, one for possession of contraband, one for involvement with a gang, and one for profane language. [Doc. 44-1 at 42-43].

The Standard Operating Procedures ("SOP") at Mountain View related to "Disruptive Offenders" was implemented to "provide systematic methods which assist in preventing unnecessary or unreasonable force against an offender that demonstrates unruly, threatening, disruptive, or disrespectful behavior while confined in the Restrictive Housing Unit or Housing Unit." [Doc. 44-2 at ¶ 3 (citing .1401)]. The SOP allows for the use of full mechanical, or four-point, restraints for disruptive behavior. [Id. (citing .1406(D); see .1406(A)]. After the restraints are applied, the SOP requires

that the inmate be screened by medical personnel. [Id. (citing .1406(D)(2))]. The SOP also requires that the inmate be observed by correctional staff every 15 minutes. [Id. (citing .1406(D)(1))]. The SOP provides that the inmate is to remain in full restraints until the inmate shows positive behavior, at which time the step-down procedures are implemented pursuant to SOP .1700, Attachment J Removal of Restraints. [Doc. 44-2 at ¶ 3 (citing .1406(D)(3))]. Under Attachment J, at two-hour increments on continued positive behavior, the connecting chain, the leg restraints, the waist chain, and the handcuffs, respectively, are removed. [See Doc. 44-1 at 33-34]. While the process can be completed in as short as eight hours, the SOP allows for full restraints to be applied for a maximum of 48 hours. [Doc. 44-2 at ¶ 3 (citing .1406(D)(6))].

On January 13, 2019, Plaintiff was housed in the Restrictive Housing Unit (RHU) at Mountain View. [Doc. 44-2 at ¶ 4]. While Captain Hudgins was making his rounds that morning through the RHU at Mountain View, Plaintiff was being loud and argumentative. During Hudgins interactions with Plaintiff, Plaintiff made the statement, "you can suck my dick for all I care." [Id.]. Hudgins then sought and received permission from Superintendent Slagle to place Plaintiff into full restraints to control his behavior and restore order. Hudgins did not use them as punishment. After Hudgins received

permission for the restraints, he ordered Sergeant Richardson and his staff to apply the restraints on Plaintiff. [Id. at ¶ 5].

At approximately 7:13 a.m., the full restraints were applied by Officers Grant, Renfro, and Turner. [See Doc. 44-1 at ¶ 5 ("Incident Video"); Doc. 44-3 at ¶ 3; Doc. 44-4 at ¶ 3; Doc. 44-5 at ¶ 3]. Sergeant Richardson supervised the application of the restraints and Officer Odom videotaped the entire process with a hand-held video camera. [Doc. 44-5 at ¶ 3; Doc. 44-6 at ¶ 3; see Incident Video]. Sergeant Richardson explained to Plaintiff that full restraints were being applied because Plaintiff continued his disruptive behavior despite orders to stop. Plaintiff readily complied with application of the restraints, which was performed by Officers Grant, Turner, and Renfro. [Incident Video; Doc. 44-3 at ¶ 3; Doc. 44-4 at ¶ 3; Doc. 44-5 at ¶ 3]. At no time during the application of the restraints did Plaintiff request to use the bathroom or complain that the restraints were too tight. [Incident Video]. While the officers applied the restraints, a nurse can be heard in the background preparing to evaluate Plaintiff. After the restraints were applied, Plaintiff was left sitting on his bed and not in a fetal position, as Plaintiff alleged. [Id.]. In the very last instant of the video footage, a toilet is seen in Plaintiff's cell. [Id.]. A nurse then evaluated Plaintiff to ensure there were no health concerns in placing Plaintiff in full restraints. [Doc. 44-7 at ¶ 5].

Plaintiff told the nurse, "I am good" and she noted, "[capillary] refill normal and no impairments noted. To recheck in 4 hours. Inmate had no complaints." [Doc. 44-1 at 40-41].

After the restraints were applied, and as Plaintiff alleged, Officers Ray and Garland observed Plaintiff every 15 minutes pursuant to the SOP. [Docs. 44-7 at ¶ 7, 44-8 at ¶ 5]. During those observations, Plaintiff never requested to use the toilet, did not complain of having defecated on himself, did not smell of feces, and Officers Garland and Ray did not observe any feces on Plaintiff or his clothing. [Doc. 44-8 at ¶ 5; Doc. 44-7 at ¶ 7].

At 9:13 a.m., Officer Ray and Officer Wiseman removed the connecting chain. [Doc. 44-8 at ¶ 6]. Before they removed the connecting chain, Plaintiff was seated on his bed and was not in the fetal position. [Id.]. At this time, Plaintiff did not request to use the toilet, complain of having defecated on himself, or smell of feces, and Officer Ray did not observe any feces on Plaintiff or his clothing. [Id.].

At 11:15 a.m., the nurse returned to examine Plaintiff. [Doc. 44-1 at 38]. Plaintiff reported, "I am fine." The nurse noted, "no significant findings [or] apparent distress." [Id. at 38-39]. At 11:20 a.m., Officer Garland removed Plaintiff's leg restraints. At this time, Plaintiff did not request to use the toilet, complain of having defecated on himself, or smell of feces, and

11

Officer Garland did not observe any feces on Plaintiff or his clothing. [Doc. 44-7 at ¶ 8]. At 1:15 p.m., Officer Garland removed Plaintiff's waist chain. At this time, Plaintiff did not request to use the toilet, complain of having defecated on himself, or smell of feces, and Officer Garland did not observe any feces on Plaintiff or his clothing. [Id. at ¶ 9]. Finally, at approximately 3:13 p.m., Officer Garland removed Plaintiff's handcuffs. At this time, Plaintiff did not request to use the toilet, complain of having defecated on himself, or smell of feces, and Officer Garland did not observe any feces on Plaintiff or his clothing. [Id. at ¶ 10].

On January 16, 2019, Plaintiff pleaded guilty to a disciplinary charge of disobeying an order in relation to this incident. [Doc. 44-1 at 44]. He declined to make a statement in his disciplinary proceeding. [Id. at 50]. Since the subject incident, Plaintiff has been charged with 26 disciplinary infractions. [Id. at 42-43].

## IV. DISCUSSION

### A. Sovereign Immunity

A suit against a state official in his official capacity is construed as a claim against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983.

Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, to the extent Plaintiff sued Defendants in their official capacities, Defendants are entitled to summary judgment on these claims.

### B. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). The Eighth Amendment also protects prisoners from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.

1996). Plaintiff alleged Eighth Amendment claims based on both the use of excessive force and inhumane conditions of confinement.

### A. Excessive Force

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Here, Plaintiff contends that Defendants violated his rights under the Eighth Amendment by using excessive force in applying the four-point restraints in a manner that left Plaintiff in an "uncompromising, unbending,

14

inflexible fetal position" for at least two hours. The forecast of evidence before the Court, however, leaves no genuine issue of material fact on this claim for trial. The video evidence shows that Plaintiff was left seated in his bed after application of the restraints. Moreover, the restraints were applied without the use of force and none of them were applied too tightly. Once Plaintiff was in the restraints, he told the nurse that he was "good." Although Plaintiff certainly could not have been terribly comfortable in the restraints, he was by no means left in an unyielding fetal position, as he originally alleged. As such, Plaintiff's bare claim that Defendants used force "maliciously and sadistically [ ] for retaliation and punishment" is plainly unsupported by the forecast of evidence.[3] Therefore, the Court will grant Defendants' summary judgment on Plaintiff's individual capacity Eighth Amendment claim based on the use of excessive force.

### B. Conditions of Confinement

"Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment."

---

[3] Plaintiff's argument that Defendants violated his Eighth Amendment rights simply by violating Mountain View SOP by the application of four-point restraints in the first place is unsupported both in law and fact. Even if true, which is contradicted by the forecast of evidence, violation of a prison policy by prison officials does not establish a constitutional violation. See Riccio v. Cty of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights that the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Rather, extreme deprivations are required, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)). Further, a plaintiff must allege and prove facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 847 (1994).

The forecast of evidence here establishes that there is no genuine issue of material fact for trial on Plaintiff's conditions of confinement claim. The forecast shows that the Plaintiff was subjected to full restraints according to prison policy and for the minimal amount of time thereunder. He was monitored every 15 minutes. The components of the four-point restraints were properly removed at two-hour increments. Plaintiff never requested to use the bathroom while his was in restraints, he told the nurse on application of the restraints and four hours later that he was fine, and, at the very least, he could have readily defecated eight hours after having been placed in the restraints. The forecast of evidence simply implicates no constitutionally recognized deprivation or denial. See Hudson v. McMillian, 503 U.S. at 9.

In sum, there is no genuine issue of material fact as to Plaintiff's Eighth Amendment conditions of confinement claim and it will be dismissed on these grounds.

### C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because Plaintiff has not forecasted evidence that Defendants violated a constitutional right, Defendants are also entitled qualified immunity on

Plaintiff's individual capacity claims.  The Court, therefore, grants summary judgment for Defendants on this ground as well.

## VI. CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment is granted.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 43] is **GRANTED**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: June 7, 2021

Martin Reidinger
Chief United States District Judge